UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MIRANDA M., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN J. O'MALLEY, )<br>)<br>)<br>Defendant. ) | No. 1:24-cv-00333-MPB-MKK |

**REPORT & RECOMMENDATION**

Plaintiff Miranda M.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Title II Disability Insurance Benefits ("DIB"). On July 17, 2024, United States District Judge Matthew P. Brookman entered an Order referring this matter to the undersigned for a report and recommendation regarding the appropriate disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 16). For the reasons set forth below, the undersigned recommends that the Commissioner's decision denying Plaintiff's application for benefits be **AFFIRMED**.

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The undersigned has elected to implement that practice in this Order, in both the Order's body and the Order's caption.

## I. Procedural History

Plaintiff filed her application for benefits on July 12, 2021, alleging disability beginning May 19, 2021. (Dkt. 10-5 at 13, R. 188). Her claim was initially denied on January 10, 2022, (Dkt. 10-3 at 20, R. 87), then again upon reconsideration on March 28, 2022, (*id.* at 21, R. 88). Plaintiff requested a hearing, which occurred telephonically before ALJ Teresa Kroenecke on October 4, 2022. (Dkt. 10-2 at 38, R. 37). At the hearing, Plaintiff, who was represented by counsel, and Vocational Expert ("VE") Stephanie Archer testified. (*Id.* at 40, R. 39). In a written decision, the ALJ concluded Plaintiff had not been under a disability, as defined in the Social Security Act, from May 19, 2021, through the date of the decision, July 27, 2023. (*Id.* at 25, R. 24). The Social Security Administration's ("SSA's") Appeals Council denied Plaintiff's request for review, finding Plaintiff failed to provide a basis for changing the ALJ's decision. (*Id.* at 2, R. 1). Plaintiff then filed for judicial review. *See* 42 U.S.C. § 405(g).

## II. Legal Standard

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously

engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a).[2]

> The ALJ must consider whether: (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (v); *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then [s]he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to DIB. Often, the parallel section pertaining to the other type of benefits—supplemental security income ("SSI")—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 416.920(a). Because the statutory references for DIB and SSI claims are substantially similar, the undersigned may reference them interchangeably throughout this opinion.

*Id.* (citations omitted); *see also* 20 C.F.R. § 404.1520. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe[.]" *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citations omitted). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004) (citation omitted). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work in the national economy. See 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352 (citation omitted). If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* (citation omitted). The Commissioner must then establish that the claimant—in light of her age, education, job experience, and RFC to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(g).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence and free of legal error. *Dixon v.*

4

*Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citation omitted). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (citation omitted). The standard demands "more than a scintilla" of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001) (citation omitted). Thus, the issue before the Court is not whether Plaintiff is disabled, "but rather, whether the ALJ's findings were supported by substantial evidence" and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)); *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), as amended (Dec. 13, 2000) (citations omitted); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (alteration in original)

5

(quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)) ("Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'"). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision . . . and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues[.]" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citations omitted); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusions[,]" *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citation omitted). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (citations omitted); *Clifford*, 227 F.3d at 872 (citation omitted).

### III. Background

#### A. Factual Background

Plaintiff was 45 years old as of the alleged onset date. (Dkt. 10-3 at 2, R. 69). She has at least a high school education, (Dkt. 10-6 at 5, R. 208), and past relevant

work as a data administrator, receptionist, designer, and teller, (Dkt. 10-2 at 14, R. 23).

## B.   ALJ Decision

In determining whether Plaintiff qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). (Dkt. 10-2 at 12–25, R. 11–24). At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 19, 2021, the alleged onset date. (*Id.* at 14, R. 13). At Step Two, the ALJ found numerous severe impairments: polyarticular psoriatic arthritis, lumbar degenerative disc disease, bilateral knee degenerative joint disease, fibromyalgia, idiopathic small fiber neuropathy, obesity, depression, bipolar disorder, anxiety, and posttraumatic stress disorder. (*Id.*). The ALJ also found non-severe impairments of hypertension, migraines, obstructive sleep apnea, gout, and hypothyroidism. (*Id.*). The ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.*). In arriving at this conclusion, the ALJ considered Listings 11.14 (peripheral neuropathy), 14.09 (inflammatory arthritis), 1.15 (skeletal spine disorders compromising a root nerve), 1.16 (lumbar spinal stenosis compromising the cauda equine), 1.18 (bilateral knee degenerative joint disease), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor-related disorders), as well as Social Security Rulings 12-2p (fibromyalgia) and 19-2p (obesity). (*Id.* at 14–16, R. 13–15). For each listing, the ALJ concluded the

substantial evidence of record was insufficient to establish any sets of criteria under the listing. (*Id.* (explaining such finding was "consistent with the opinions of the reviewing physicians and psychologists with Disability Determination Services whose opinions are entitled to considerable deference when they are supported by the record.")). As to the "paragraph B" criteria, the ALJ concluded that Plaintiff had moderate limitations in: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (*Id.* at 17, R. 16). Plaintiff had only a mild limitation in adapting or managing herself. (*Id.*).

At Step Three, but before Step Four, the ALJ found Plaintiff could perform light work, as defined in 20 C.F.R. § 404.1567(b), except with:

> occasional stooping, crouching, and climbing of ramps and stairs; no kneeling, crawling, or climbing of ladders, ropes, or scaffolds; and no exposure to vibrations, or hazards, such as unprotected heights or dangerous machinery. She is able to understand, remember, and carry out short, simple, routine instructions. She is able to sustain attention and/or concentration for at least two-hour periods at a time and for eight hours in the workday on short, simple, routine tasks; no fast-paced production work, no assembly line work. She can tolerate only occasional interaction with supervisors, coworkers, and the general public.

(Dkt. 10-2 at 18, R. 17). At Step Four, the ALJ found Plaintiff was not able to perform past relevant work. (*Id.* at 24, R. 23). However, at Step Five, the ALJ concluded Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy considering Plaintiff's age, education, work

8

experience, and RFC. (*Id.* at 24–25, R. 23–24). As such, the ALJ concluded Plaintiff was not disabled. (*Id.* at 25, R. 24).

## IV.   Discussion

Plaintiff argues substantial evidence did not support many of the ALJ's determinations, including those that she (1) could perform light work; (2) could perform work other than her past relevant work; and (3) did not require a mental consultative exam. Plaintiff also challenged the ALJ's analysis of the opinion evidence. (Dkt. 12 at 19). The Commissioner responds that substantial evidence supports all these aspects of the ALJ's decision and that Plaintiff's arguments amount to a request to reweigh the evidence. (Dkt. 14 at 3–5).

### A.   RFC for Light Work

Plaintiff takes particular issue with the ALJ finding she was capable of light work without addressing "the severity of the arthritis in [Plaintiff's] right knee and why she thought [Plaintiff] could sustain the standing and walking requirements of light work with bone-on-bone arthritis in a weight bearing joint." (Dkt. 12 at 20; *see also* Dkt. 15 at 1). Specifically, Plaintiff argues the ALJ failed to adequately address Dr. Mrisa Sahai's documentation that Plaintiff had tenderness in both knees with bilateral crepitations. (Dkt. 12 at 20; Dkt. 10-7 at 317–19, R. 618–20). Disagreeing, the Commissioner alleges the ALJ reasonably found Plaintiff could do the standing

9

and walking associated with a reduced range of light work, as prescribed, and duly supported those findings. (Dkt. 14 at 3).

As Plaintiff concedes, the ALJ acknowledged and analyzed Plaintiff's arthritis. (Dkt. 12 at 20; Dkt. 10-2 at 19, R. 18). This fact alone puts Plaintiff on an uphill path at this judicial review stage. *See Denton v. Astrue*, 596 F.3d 419, 425–26 (7th Cir. 2010). However, Plaintiff does not believe the ALJ properly analyzed the *severity* of the arthritis. (Dkt. 12 at 20). A holistic review of the ALJ's decision shows that Plaintiff's critique stretches too far.

The ALJ's decision is replete with discussion of Plaintiff's arthritis. The ALJ analyzed Plaintiff's reports of her joints doing well, as well as her complaints of right knee pain; the ALJ also reviewed Plaintiff's x-rays, which showed tricompartmental osteoarthritis in the right knee and early arthritis in the left knee. (Dkt. 10-2 at 19, R. 18; Dkt. 10-7 at 6, R. 307). The ALJ emphasized Plaintiff's positive response to new medication for her joint pain in March 2023, although she noted that Plaintiff was nevertheless complaining "of worsening knee pain." (Dkt. 10-2 at 20, R. 19; Dkt. 10-8 at 53, R. 799). Further, the ALJ considered that Plaintiff's obesity (another severe impairment) likely exacerbated her musculoskeletal pain and joint pain. (Dkt. 10-2 at 21, R. 20).

The ALJ also considered Dr. Debra Sturm's consultative exam of Plaintiff, conducted in December 2021, (*id.* at 17–19, R. 16–18 (citing Exhibit 9F)), during which Plaintiff detailed her history of bipolar disorder, anxiety, fibromyalgia, monthly migraines, and psoriatic arthritis—especially in her knees and hips, (Dkt.

10

10-7 at 209, R. 510). During Dr. Sturm's physical exam, Plaintiff "was able to walk on heels and toes, tandem walk, stand on the left leg alone (but not the right), and perform a partial squat without difficulty. She was also able to get on and off the exam table without difficulty. She did not use any assistive device." (Dkt. 10-2 at 19–20, R. 18–19; *see also* Dkt. 10-7 at 209–12, R. 510–13). Plaintiff also exhibited full motor strength, full grip strength, full range of motion in arms and legs, and normal sensation and reflexes. (*Id.*). Further, Dr. Sturm noted the knees revealed "no crepitus, tenderness, swelling, effusion, laxity or nodules" except for mild right knee nodularity. (Dkt. 10-7 at 211, R. 512). Dr. Sturm then opined that Plaintiff could stand and walk for six hours per workday, consistent with the demands of light work. (*See id.* at 212, R. 513 ("Despite the claimant's impairments, she may be able to do activities such as sitting, lifting, and handling objects on a regular and continuous basis (8 hours a day) or standing, walking or carrying on a continuous basis (more than 2/3 of work day).")).

    Likewise, as the ALJ noted, an electromyograph showed no evidence of peripheral neuropathy in Plaintiff's legs. (Dkt. 10-2 at 20, R. 19; Dkt. 10-7 at 386, R. 687). And Plaintiff's primary care physician, Dr. Debra Balos, stated that none of the conditions for which she treated Plaintiff was disabling. (Dkt. 10-2 at 14, R. 13; Dkt. 10-7 at 248–51, R. 549–52). Based on a review of that evidence as well as the other medical evidence and testimony, the ALJ concluded Plaintiff could perform the standing and walking required to work at a light exertional level. (Dkt. 10-2 at 21, 24, R. 20, 23 (finding "the claimant's subjective complaints and alleged

11

limitations are not fully consistent with the evidence and she retains the capacity to perform work activities with the [reduced light work] limitations")). The ALJ considered, and discussed, ample evidence in determining Plaintiff could perform the reduced range of light work (*e.g.*, no kneeling or crawling) assigned in the RFC. As such, Plaintiff's argument the ALJ failed to bridge the gap between the facts and her conclusion that Plaintiff could perform reduced light work fails to persuade.

    Next, Plaintiff urges that Dr. Sturm's December 21, 2021, exam should not have been given the weight it was because "there [was] substantial evidence created after the date of the exam that shows [Plaintiff's] condition ha[d] deteriorated[.]" (Dkt. 15 at 1–2). She refers to Dr. Sahai's August 2022 findings and x-rays of her tricompartmental osteoarthritis, which, Plaintiff claims, differ significantly from Dr. Sturm's findings. (*Id.*). However, as Plaintiff acknowledges, (*id.* at 1), the ALJ considered the x-rays indicating tricompartmental osteoarthritis and Dr. Sahai's exam, along with Dr. Sturm's findings, before concluding Dr. Sturm's conclusions were "mostly persuasive." (Dkt. 10-2 at 20, 23, R. 19, 22). Although the ALJ does not mention Dr. Sahai's name in the decision, she refers to Dr. Sahai's August 2022 report throughout, specifically mentioning the report's notations that Plaintiff had "paralumbar muscle tenderness, tenderness to her hips and knees, and crepitation at her knees." (*Id.* at 20, R. 19; *see also id.* at 14–15, 22, R. 13–14, 21 (citing Exhibit 19F – Dr. Sahai's August 2022 Final Report); Dkt. 10-7 at 355, R. 656). Regardless, recitation of all medical evidence is not required. *See Arnett*, 676 F.3d at 592. As discussed, the standard of review does not require the ALJ to reference every piece

12

of medical opinion in the decision. *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citation omitted) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning"). Rather, this Court focuses on whether such decision was supported by substantial evidence. *Biestek*, 587 U.S. at 102–03. And an ALJ's discussion of the record is sufficient if it does not "ignore[] an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). The undersigned finds that the ALJ's decision satisfies this standard.

During Dr. Sahai's August 2022 exam, Plaintiff reported that she "ha[d] been having a lot of pain to her hands" and that "her knees and feet [we]re bothersome." (Dkt. 10-7 at 317, R. 618). She felt her symptoms had been getting worse. (*Id.*). Dr. Sahai noted that Plaintiff had joint pain, stiffness, and swelling as well as muscle pain but with no joint redness or warmth. (*Id.*). The doctor also indicated Plaintiff had "knee tenderness to joint line of right and left knee with crepitation no palpable effusion, no erythema." (*Id.* at 318, R. 619). Although some of these findings are different from those of Dr. Sturm, Plaintiff does not explain how these differences, *i.e.*, x-rays and notations of tenderness and crepitation, negate Dr. Sturm's findings or, more significantly, fatally undermine the ALJ's findings that Dr. Sturm's opinion was "mostly persuasive" and Plaintiff was not disabled. As such, the undersigned cannot conclude the ALJ ignored a line of evidence that supported a finding of disability. *See Deborah M.*, 994 F.3d at 788. To the contrary, the ALJ

13

addressed the very evidence highlighted by Plaintiff. The ALJ reviewed and discussed numerous sources of medical evidence in her decision and, based on that comprehensive review as well as Dr. Sturm's "mostly persuasive" findings, (Dkt. 10-2 at 23, R. 22), concluded that Plaintiff could stand and walk appropriately for a reduced range of light work. Therefore, the undersigned finds the ALJ's RFC determination regarding limited light work was supported by substantial evidence.

### B.     ALJ's Step Five Conclusion

Next, Plaintiff asserts the ALJ did not address the VE's testimony regarding time off task or absences, (Dkt. 10-2 at 66, R. 65 (affirming that "5 percent is the general tolerance for off task behavior in these types of jobs"; noting absences are generally tolerated around once a month)); therefore, the argument goes, the ALJ's conclusion Plaintiff could perform other work under Step Five was not supported by substantial evidence. (Dkt. 12 at 20). The Commissioner asserts, however, that because the ALJ did not find Plaintiff had the limitations about which she asked the VE, she was not required to discuss them in her decision. (Dkt. 14 at 9 (citing *Winsted v. Berryhill*, 923 F.3d 472, 476–77 (7th Cir. 2019); *Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020)); *see also* Dkt. 10-2 at 22, R. 21 (ALJ found "claimant's description of the location, duration, frequency, and intensity of her symptoms unpersuasive as they are generally unfounded elsewhere in the record")). Indeed, the ALJ considered Plaintiff's performance at her prior job, *including absences*, but did not find such evidence precluded her ultimate finding. (*See* Dkt. 10-2 at 22, R. 21 ("information from her prior employer (Exhibit 2D) show no issues

14

with her concentration, persistence, pace, or social functioning in performing her job duties, though she was absent frequently"); *see also* Dkt. 10-5 at 5–6, R. 180–81).

The ALJ also adequately addressed Plaintiff's activities of daily living. The ALJ acknowledged that Plaintiff's daily activities were "fairly limited," and noted that Plaintiff testified she was "capable of at least some cooking, cleaning, and shopping, ha[d] no problems with personal care, and [was] able to function independently and take care of her own basic needs." (Dkt. 10-2 at 22, 56–59, R. 21, 55–58). Plaintiff concedes the ALJ acknowledged her daily activities testimony but argues the ALJ failed to address the tremendous pain involved in some of those activities or the breaks required to get through them. (Dkt. 12 at 21 (Plaintiff testified she needed "occasional breaks for movement[,]" used a mobility scooter anywhere that required prolonged walking, avoided shopping, spent at least one day per week in bed, and kept an office chair in her kitchen for breaks)). Again, the Commissioner counters that the ALJ is not required to discuss every piece of evidence, "so long as she does not 'ignore[] an entire line of evidence that supports a finding of disability.'" *Deborah M.*, 994 F.3d at 788; *Warnell*, 97 F.4th at 1053.

Contrary to Plaintiff's allegations, the ALJ discussed Plaintiff's allegations of constant pain at length. (Dkt. 10-2 at 16, 19–22, R. 15, 18–21). Likewise, she addressed Plaintiff's use of the scooter and periodic inability to leave bed. (Dkt. 10-2 at 20, 21, 23, R. 19, 20, 22). And, as noted, the ALJ considered Plaintiff's absences

15

from her past job. Therefore, the undersigned does not find Plaintiff's arguments compelling and concludes the ALJ sufficiently supported her findings.

### C. Denial of Mental Consultative Exam

The ALJ denied Plaintiff's request for a mental consultative exam because she did not find any conflict, inconsistency, or ambiguity in the evidence. (Dkt. 10-2 at 11, R. 10). Plaintiff contends the ALJ erred in doing so because the ALJ noted Plaintiff's therapist from February 2021 to May 2022 had different medical opinions than her other therapists at different facilities, which, Plaintiff claims, constituted a "significant conflict" that warranted further investigation. (Dkt. 12 at 22; Dkt. 10-2 at 21, R. 20). In comparing those therapists' opinions, however, the ALJ indicated that as time progressed, Plaintiff reported less depression and possible partial remission of her major depressive disorder. (Dkt. 10-2 at 21–22, R. 20–21). While these opinions "differ," especially as time went on, Plaintiff does not explain how such differences are not simply improvement but instead "warranted further investigation."

Importantly, as the Commissioner contends, the decision to deny an exam is entirely within the discretion of the ALJ, who "may" order an exam if she cannot otherwise make a disability determination. (Dkt. 14 at 6 (citing *Poyck v. Astrue*, No. 1:09-CV-0509-LJM-JMS, 2010 WL 2346970, at *6 (S.D. Ind. June 8, 2010), aff'd, 414 F. App'x 859 (7th Cir. 2011); *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007); *Stambaugh v. Sullivan*, 929 F.2d 292, 296 (7th Cir. 1991); 20 C.F.R. § 404.1519a)). Therefore, if the record contains enough information for the ALJ to reach a decision,

16

she need not order a consultative examination. *Skinner*, 478 F.3d at 844. Here, the ALJ explained that she did, in fact, find the evidence was sufficient to evaluate Plaintiff's impairments and, in the absence of conflict, inconsistency, or ambiguity in the evidence, she did not find a consultative exam was necessary. (Dkt. 10-2 at 12, R. 10). That decision was within her discretion. *See Skinner*, 478 F.3d at 844.

Moreover, Plaintiff does not indicate what specific evidence a mental consultative examination would have provided, *see Poyck*, 414 F. App'x at 861 (citation omitted) ("the burden is on the claimant to introduce some objective evidence that further development of the record is required"), or how any discrepancies in her doctors' medical opinions may have been remedied by such exam. As the Seventh Circuit has emphasized, "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) (citation omitted). Therefore, because the record contained sufficient evidence to assess Plaintiff's mental impairments and because Plaintiff failed to show what evidence the consultative examination would have produced, Plaintiff's argument fails.

### D.    Opinion Evidence

Lastly, Plaintiff argues the ALJ failed to adequately address opinion evidence, which would have indicated greater limitations. (Dkt. 12 at 23). First, she notes the ALJ failed to consider evidence that conflicted with Dr. Sturm's consultative physical exam, improperly finding it was "mostly persuasive[,]" although "somewhat vague." (Dkt. 12 at 23; Dkt. 10-2 at 23, R. 22). As discussed,

17

(*see supra* Part IV.A), she claims there was evidence that showed her pain and functional status were different from the consultative examiner's descriptions and that her condition continued to deteriorate after that consultative exam. (*Id.* at 24; Dkt. 10-7 at 427, R. 728; Dkt. 10-8 at 54, R. 800 (eight months after the exam, Plaintiff had x-rays done that showed severe tricompartmental osteoarthritis in the right knee with bone-on-bone articulation, and she was referred to an orthopedic surgeon in March 2023)). Further, Plaintiff claims the ALJ's conclusion that her physical impairments showed mostly normal objective physical exam findings, (Dkt. 10-2 at 22, R. 21), did not properly consider that many of her visits were done by telehealth during the COVID-19 pandemic and did not allow for thorough physical exams. (Dkt. 12 at 24). And the ALJ's reliance on her primary care provider's statement that Plaintiff had no disabling conditions, (Dkt. 10-2 at 22–23, R. 21–22), was improper because that provider was not treating her for her disabling conditions. (*Id.*).

As discussed at length previously, the ALJ's findings regarding Dr. Sturm's exam were sufficiently analyzed and supported by substantial evidence. (*See supra* Part IV.A); *see also Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (citation omitted) (ALJ decision to be read holistically). Likewise, Plaintiff's qualms with the ALJ's failure to discuss the realities of her telehealth exams are not persuasive. The ALJ acknowledged that at least one of Plaintiff's rheumatology appointments was held via telehealth, (Dkt. 10-2 at 19, R. 18), and as emphasized, the ALJ is not required to transcribe the entire record into her decision. *See Warnell*, 97 F.4th at

1053. While the ALJ noted that many of Plaintiff's exams showed mostly normal objective physical exam findings, she clarified that she was aware "that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone"; therefore, she also "examined the claimant's statements regarding the factors listed in 20 CFR 404.1529(c)(3)." (Dkt. 10-2 at 22, R. 21). She then examined each of those factors in detail. (*Id.* at 22–24, R. 21–23). Such analysis was supported by substantial evidence.

Finally, as to Plaintiff's primary care physician's statement regarding her disabling conditions, the undersigned does not find the ALJ's reference requires reversal. The ALJ noted Plaintiff's primary care physician had crossed out all the pages on her Physical Medical Source Statement and stated she "was not treating [Plaintiff] for any disabling conditions[.]" (*See* Dkt. 10-7 at 248–251, R. 549–552). While Plaintiff's emphasis on the nuance—that other physicians were treating her more severe conditions—is well received, it does not show that the ALJ's reference to a statement in the record was inaccurate or that her ultimate conclusion was not supported by substantial evidence. Indeed, after referencing that statement, the ALJ considered numerous other portions of the medical evidence before making her conclusion:

> Given the indications that her polyarticular psoriatic arthritis was well controlled on medications (Exhibit 1F); or stability with no evidence of active disease (Exhibits 19F; 24F at 49-64); improvement with medication (Exhibits 13F, 28F); or with surgery (Exhibit 24F at 3-6, 47-48; 29F); as well as various predominately within normal limits

19

> physical exams (Exhibits 1F, 9F, 13F, 22F), I do not find the evidence supportive of a complete inability to sustain work activities commensurate with the residual functional capacity adopted herein.

(Dkt. 10-2 at 22, R. 21). As such, the undersigned finds substantial evidence supported the ALJ's determinations.

## V.   Conclusion

For the reasons detailed herein, the undersigned recommends that the ALJ's decision denying Plaintiff benefits be **AFFIRMED**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

So **RECOMMENDED**.

Date: 11/27/2024

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel via CM/ECF.